COMMONWEALTH *vs.* THEODORE NEAL WATKINS.

Middlesex. February 6, 2001. - March 20, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Practice, Criminal,* New trial, Presumptions and burden of proof, Reasonable doubt, Instructions to jury. *Waiver.*

Where a criminal defendant could have raised, in his first postdirect appeal motion for a new trial, the issue of the constitutional adequacy of the trial judge's instructions to the jury on reasonable doubt, but did not, the issue was waived; the defendant's third postdirect appeal motion for a new trial raising the issue was correctly denied. [541-544, 546-548]

Discussion of Massachusetts decisions considering, in jury instructions in criminal cases, moral certainty language or moral certainty language that departed in material respects from *Commonwealth* v. *Webster*, 5 Cush. 295, 320 (1850). [544-546]

INDICTMENTS found and returned in the Superior Court on November 9, 1976.

Following review by this court, 377 Mass. 385 (1979), a third postdirect appeal motion for a new trial, filed on March 17, 1995, was heard by *Regina L. Quinlan*, J.

An application for leave to prosecute an interlocutory appeal was allowed by *Fried*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him.

*John H. LaChance* for the defendant.

*Kevin J. Curtin*, Assistant District Attorney, for the Commonwealth.

GREANEY, J. A single justice of this court, acting pursuant to the gatekeeper provision in G. L. c. 278, § 33E, allowed the defendant's application for leave to appeal from an order denying his third postdirect appeal motion for a new trial filed in 1995. In the motion, the defendant challenged, as constitutionally inadequate, the reasonable doubt instructions given to the jury by the Superior Court judge who presided at his trial in 1977. The Superior Court judge who ruled on the motion

concluded that the defendant had not waived his claim by failing to raise it on direct appeal or in previous postconviction motions, but that the criticized instructions, considered in the context of the entire charge, did not deprive the defendant of a fair trial. The single justice certified both the waiver issue, and the defendant's substantive claim, for consideration by the full court. We conclude that the defendant's present attack on the instructions has been waived because the defendant failed to raise it in 1987, in his first postdirect appeal motion for a new trial. The defendant's third postdirect appeal motion for a new trial, therefore, was properly denied.

The background of the appeal is as follows. The defendant was convicted in 1977 of murder in the first degree and kidnapping. This court affirmed his convictions in *Commonwealth* v. *Watkins*, 377 Mass. 385, cert. denied, 442 U.S. 932 (1979). In that opinion, the court rejected the defendant's challenge, considered under G. L. c. 278, § 33E, that the trial judge erroneously defined reasonable doubt in his charge to the jury. The defendant's initial motion for a new trial was filed five days after the judgments of conviction were entered. The defendant in this motion alleged that the "verdict [of murder in the first degree] was against the weight of the evidence." The trial judge denied the motion, and no appeal was taken from the order.

The defendant filed, over the years, three additional motions for a new trial. These motions were decided by Superior Court judges other than the trial judge, who, in 1979, had been appointed to the United States District Court for the District of Massachusetts. The defendant's first postdirect appeal motion was filed pro se in 1987, and alleged that trial counsel had provided him with constitutionally inadequate representation. The motion was denied, and the defendant did not seek leave from a single justice to appeal from the order of denial to this court. The defendant filed his second postdirect appeal motion for a new trial pro se in 1988. The motion, amended after counsel was appointed for the defendant, asserted three claims: (1) the evidence was insufficient to warrant his convictions; (2) the prosecutor's closing argument contained improper remarks that were prejudicial; and (3) the trial judge's instructions on

specific intent and malice impermissibly shifted the burden of proof. This motion also was denied, and a single justice of this court, in a lengthy memorandum, denied his application for leave to appeal.[1]

The defendant filed the motion with which we are concerned (his third postdirect appeal motion) in 1995.[2] In the motion, the defendant claimed that the judge's instructions on reasonable doubt were erroneous to a degree that deprived him of due process. Specifically, he pointed to one sentence delivered near the end of the instructions on reasonable doubt: "The question you [the jury are to] ask yourselves is: 'Are you morally certain, are you reasonably satisfied by the evidence that the defendant committed such acts as to amount to the crime alleged, or the crimes alleged?' " The defendant asserts that the whole charge was irreparably contaminated, because the sentence used the term "morally certain" instead of "moral certainty," and linked the concept to a diluted standard of proof, namely a standard of "reasonable satis[faction]." Thus, the defendant states in his brief that, impermissibly, "the trial judge left the jury to ponder the morally certain/reasonably certain language[, and they] could easily have determined that they were morally certain or reasonably certain on evidence that the ·defendant was more likely guilty than not."

The defendant's present claim, argued in various ways, is that he is entitled to a new trial because the "morally certain, reasonably satisfied" language in the judge's reasonable doubt instructions improperly reduced the Commonwealth's burden of proof under decisions such as *Cage* v. *Louisiana*, 498 U.S. 39 (1990), and *Commonwealth* v. *Pinckney*, 419 Mass. 341 (1995). The defendant asserts that, until 1990, when the United States Supreme Court's decision in *Cage* v. *Louisiana, supra,* questioned the use of the term "moral certainty" in reasonable doubt instructions, he could not have been aware that the language used by the judge could have created a due process

---

[1]In 1990, the defendant filed pro se a petition seeking relief in the nature of habeas corpus in the United States District Court for the District of Massachusetts. The petition asserted issues that the defendant had raised in his second postdirect appeal motion for a new trial. The petition was dismissed.

[2]As with his second postdirect appeal motion for a new trial, the defendant filed this motion pro se, and counsel then was appointed to represent him.

error.[3] The defendant thus contends that the issue has not been waived by his failure to raise it at any prior time. See, e.g., *Commonwealth* v. *Bonds*, 424 Mass. 698, 700 (1997); *Commonwealth* v. *Pinckney*, *supra* at 342-343.

There is an inconsistency in this case, however, that belies the defendant's argument. On direct appeal in 1978, the defendant's lawyer, an experienced appellate practitioner, made the same claims (among others) as those now asserted. In his brief on direct appeal, the defendant's appellate counsel argued that the judge's instructions strayed, in substantial aspects, from the accepted definition of reasonable doubt set forth in *Commonwealth* v. *Webster*, 5 Cush. 295, 320 (1850), and counsel pointed out that this court had warned against inadvisable departures in the (then) recent decisions of *Commonwealth* v. *Ferreira*, 373 Mass. 116, 128-130 (1977), *S.C.*, 381 Mass. 306 (1980), and *Commonwealth* v. *Therrien*, 371 Mass. 203, 208-209 (1976), *S.C.*, 428 Mass. 607 (1998).[4] Counsel contended, specifically, that the now challenged portion of the instructions ("Are you morally certain, are you reasonably satisfied?") was constitutionally inadequate. Comparing this language to the relevant portion of the recommended *Webster* protocol, the defendant's appellate counsel argued as follows, in his brief on direct appeal: "To be 'morally certain' and 'reasonably satisfied' as stated by the judge, is far removed in both meaning

---

[3]In *Cage*, the United States Supreme Court held that an instruction that equated reasonable doubt with "grave uncertainty" and "actual substantial doubt" and referred to a juror's "moral certainty" of a defendant's guilt, rather than "evidentiary certainty," could have allowed a finding of guilt based on a degree of proof below that required by due process. *Cage* v. *Louisiana*, 498 U.S. 39, 41 (1990).

[4]In the *Therrien* case, the trial judge used language in explaining moral certainty that the defendant claimed "might encourage the jury to reach for an emotional rather than a rational verdict." *Commonwealth* v. *Therrien*, 371 Mass. 203, 207 (1976), *S.C.*, 428 Mass. 607 (1998). This court concluded that there was no substantial error in the reasonable doubt instructions, but stated, "we are frank to say that we deprecate the use of these freehand embellishments of the standard [*Webster*] charge." *Id.* at 208 & n.7. In the *Ferreira* case, this court concluded that the trial judge's use of examples from the juror's personal lives to illustrate reasonable doubt trivialized the burden of proof, and that defect, together with another error in the instructions, required a new trial. *Commonwealth* v. *Ferreira*, 373 Mass. 116, 128-130 (1977), *S.C.*, 381 Mass. 306 (1980).

and tone from the required 'reasonable and moral certainty' that 'satisfies the reason and judgment [of reasonable jurors].' The instruction in the instant case is clearly not an improved variation of the *Webster* formulation contemplated by this Honorable Court in [*Commonwealth* v. *Ferreira, supra*]." Counsel supported his argument by pointing out the (then) growing controversy in Federal courts over the use of "moral certainty" language and cited cases such as *Dunn* v. *Perrin,* 570 F.2d 21, 24 (1st Cir.), cert. denied, 437 U.S. 910 (1978) (recognizing split in Federal courts on propriety of defining reasonable doubt in terms of "moral certainty"); *In re Winship,* 397 U.S. 358, 364 (1970) (right to proof beyond reasonable doubt is "indispensable" right); and *Chapman* v. *California,* 386 U.S. 18, 23-24 (1967) (fundamental constitutional error not subject to harmless error analysis). As has been indicated, this court reviewed the defendant's arguments on direct appeal under G. L. c. 278, § 33E, rejecting the contentions, and concluding that the judge's instructions on reasonable doubt, taken as a whole, were constitutionally adequate. *Commonwealth* v. *Watkins,* 377 Mass. 385, 388 (1979).

In light of the above, the defendant's present argument must be that, in 1978, this court did not consider the arguments by his appellate counsel with the seriousness later required by the *Cage* decision for analysis of moral certainty language in the definition of reasonable doubt, because, notwithstanding the Federal decisions and other authority cited in his brief on direct appeal, this court was consistently holding that a definition of reasonable doubt in accordance with the *Webster* decision, and its reference to moral certainty, was constitutionally sufficient. The defendant seems to say that, until the *Cage* decision in 1990, he could not have persuaded this court, no matter how eloquent his presentations, to accept the claim he now makes. Thus, he concludes that, considering his present arguments in practical terms, the true legal merit of his claim could not have been known before 1990, and consequently not waived before then. See *Mains* v. *Commonwealth, ante* 30, 34 n.4 (2000) (stating, in posttrial challenge to reasonable doubt instructions, that "[t]here is no merit to the Commonwealth's argument that the moral certainty language argument was available to the

defendant at the time of his direct appeal in 1978"). Cf. *Commonwealth* v. *Therrien*, 428 Mass. 607, 609 n.4 (1998) (stating that there was "merit to the Commonwealth's argument" that "problems associated with moral certainty language were foreshadowed well before the defendant's prior postconviction motions" that were filed between 1975 and 1987; citing numerous Federal decisions and two decisions of other States; but selecting no approximate time when the foreshadowing might have occurred).

It is true that, at the time of the defendant's direct appeal in 1978, this court consistently held moral certainty language in a reasonable doubt charge to be an appropriate factor in assessing the Commonwealth's burden of proof. See, e.g., *Commonwealth* v. *Grace*, 376 Mass. 499, 500 (1978), *S.C.*, 381 Mass. 753 (1980); *Commonwealth* v. *Fielding*, 371 Mass. 97, 116-117 (1976). In the decision of the defendant's direct appeal, this court stated approvingly that "[t]he charge properly emphasized the moral certainty, as opposed to a mathematical certainty, which we have consistently held to be a proper definition of the Commonwealth's burden." *Commonwealth* v. *Watkins, supra* at 388. See *Commonwealth* v. *Williams*, 378 Mass. 217, 232-233 (1979) (moral certainty language, by itself, does not render reasonable doubt instructions invalid, and stating that emphasis on necessity of moral certainty of guilt may overcome isolated inadequacies in explanation of reasonable doubt).

The Commonwealth correctly points out, however, that, at least by the early and mid-1980's, this court and the Appeals Court were emphasizing the need for trial judges to define reasonable doubt strictly in accordance with the entire model instruction in the *Webster* decision, of which the moral certainty language is a part, and indicating that an exact *Webster* charge would not constitute error. See, e.g., *Commonwealth* v. *Pires*, 389 Mass. 657, 664 (1983); *Commonwealth* v. *Conceicao*, 388 Mass. 255, 266-267 (1983); *Commonwealth* v. *Tavares*, 385 Mass. 140, 147, cert. denied, 457 U.S. 1137 (1982); *Commonwealth* v. *Fitzpatrick*, 16 Mass. App. Ct. 99, 99-100 (1983). As was stated in the *Pires* decision: "[W]e are [not] prepared to condemn all 'negative' language which tells the jury what does *not* constitute proof beyond a reasonable doubt. Conceptually,

such proof is sufficiently metaphysical that it may be helpful to a jury to know what does not measure up to the standard if such instruction is accompanied by *Webster* language as to the active ingredients of the proof" (emphasis original). *Commonwealth* v. *Pires, supra.* These "active ingredients" of the *Webster* charge include reference to the fact that the entire burden of proof is on the Commonwealth; that the case must be decided on all the evidence; that the jury must have "an abiding conviction, to a moral certainty, of the truth of the charge"; that "mere possible doubt" or proof of "a probability, though a strong one" are not enough; and that "reasonable and moral certainty [involve] a certainty that convinces and directs the understanding, and satisfies the reason and judgment, of those who are bound to act conscientiously upon it." *Commonwealth* v. *Webster*, 5 Cush. 295, 320 (1850). Thus, it was known from the Massachusetts decisions just cited, and the earlier *Therrien* and *Ferreira* decisions (both of which were referenced in the defendant's brief on direct appeal), that impermissible deviations from, or embellishments of, the *Webster* model could be argued as creating reversible error.

It can be safely said that, by the early and mid-1980's, this court was giving careful attention to departures from the *Webster* charge, and stressing that key components of the latter included emphasizing to the jury that they consider the evidence only and their need to reach an abiding conviction of guilt. See, e.g., *Commonwealth* v. *Lanoue*, 392 Mass. 583, 590-591 (1984), *S.C.*, 400 Mass. 1007 (1987), and 409 Mass. 1 (1990) (contested instructions, "reasonable doubt is sometimes said to be a doubt for which a good reason can be given," and "a reasonable juror" is one "earnestly seeking the truth and not looking for a doubt," not reversible error in light of judge's instruction defining "reasonable doubt . . . in terms of a final and settled conviction of guilt as well as guilt to a moral certainty"); *Commonwealth* v. *Robinson*, 382 Mass. 189, 197-198 (1981) (misstatements in charge cured by defining reasonable doubt under *Webster* as "full and abiding conviction of the guilt of the defendant" after a "careful and candid and impartial consideration of all the evidence"). Perhaps the best example of a critical assessment of departures from the *Webster* charge can be

found in *Commonwealth* v. *Beverly,* 389 Mass. 866, 870-873 (1983). There, the court discussed incorrect and misleading language in the reasonable doubt charge but concluded that the charge, as a whole, could not have led the jury to convict on a preponderance of the evidence standard because it contained the core of *Webster* ("an abiding belief of the guilt of the defendant"; "a clear and settled belief in the truth of the charges"), even without reference to the term "moral certainty." *Id.* at 871-872 & n.5. Thus, at least by the early and mid-1980's, it was reasonably apparent in Massachusetts appellate decisions, and, therefore, should have been grasped by defendants (and their lawyers) seeking to challenge jury instructions on the Commonwealth's burden of proof, that moral certainty language, or moral certainty language defined in terms that departed from the *Webster* model in material respects, could render instructions on reasonable doubt constitutionally inadequate under both Massachusetts and Federal law.[5]

Because the *Webster* charge, apart from the term "moral certainty," defines reasonable doubt in a manner that conveys to a jury the need to determine guilt based solely on all evidence and to a state of near certitude, and avoids language that would permit conviction by a lesser standard of guilt or on factors other than the courtroom proof, the charge has always been, and remains today, the preferred and adequate charge on the Com-

---

[5]Indeed, the United States Supreme Court appears to have reached this same position, when, in *Victor* v. *Nebraska,* 511 U.S. 1 (1994), it modified the holding in *Cage* v. *Louisiana,* 498 U.S. 39 (1990). In the *Victor* decision, while acknowledging that the term "moral certainty," standing alone, might not be fully understood by modern jurors as completely synonymous with "proof beyond a reasonable doubt," the Court held that use of the term is not per se error, so long as the term is used with other language in the charge that lends realistic content and meaning to the prosecution's burden of proof. *Victor* v. *Nebraska, supra* at 14-15. In this aspect, the Court expressly distinguished the *Cage* decision because the defective instructions there lacked any explanation of the term "moral certainty," and, therefore, were contentless. *Id.* at 16 ("moral certainty language cannot be sequestered from its surroundings"). When reasonable doubt instructions, considered as a whole, properly impress on the jurors the need to base their conclusion as to guilt on the evidence, and to an abiding conviction of guilt, the Court found no reasonable likelihood that a jury might misconstrue the language either as suggesting a standard of proof lower than what due process requires, or as allowing conviction on factors other than the prosecution's proof. *Id.*

monwealth's burden of proof.[6] Put differently, a charge defining reasonable doubt in accordance with the *Webster* model, accompanied by the other usual features of a charge to a jury in a criminal case (namely, the presumption of innocence; the necessity to decide the case solely on all the evidence and without regard to sympathy, emotions, or the advocacy of the lawyers; and the nature of the various types of evidence and how to evaluate them), avoids any reasonable likelihood that a jury would understand "moral certainty" to be something disassociated from the evidence, and prevents the jury from disregarding the high standard of proof required or from improperly determining guilt based on the ethics or morality of the defendant's conduct.

We conclude that, by 1987, when the defendant filed his first postdirect appeal motion for a new trial, the constitutional theory on which he now relies was sufficiently developed, so that his failure to bring the present claim in that motion constitutes a

---

[6]Although not strictly necessary to decide this appeal, we note that the reasonable doubt instructions given in this case were constitutionally acceptable despite the flaw created by equating moral certainty to a state of being "reasonably satisfied." Here, the judge (i) told the jury that they must be satisfied to "that degree of certainty that leaves you with an abiding conviction of the truth of the charge," see *Victor* v. *Nebraska, supra* at 14-15, 21; *Commonwealth* v. *Riley, ante* 266, 273 (2001); *Commonwealth* v. *Watkins,* 425 Mass. 830, 838 (1997); (ii) correctly instructed the jury that "[r]easonable doubt means that doubt that remains in the minds of reasonable men and women sitting as jurors who are seeking the truth," *Commonwealth* v. *Little,* 384 Mass. 262, 266 n.4 (1981), see *Commonwealth* v. *Gagliardi,* 418 Mass. 562, 568 n.3 (1994), cert. denied, 513 U.S. 1091 (1995); (iii) instructed that "beyond a reasonable doubt" does not mean "beyond all doubt or beyond a whimsical doubt," see *Commonwealth* v. *Smith,* 427 Mass. 245, 254 (1998); (iv) advised the jury that "[a] fact is proved beyond a reasonable doubt when it is proved to a degree of certainty that satisfies your judgment, satisfies your conscience, that such a fact is so," see *id.; Commonwealth* v. *Gagliardi, supra;* (v) told the jury that the defendant was to receive the benefit of any reasonable doubt, and that they could not convict if "when all is said and done there remains in your mind a reasonable doubt of the existence of any fact which is essential to the guilt of the defendant," see *Commonwealth* v. *Gibson,* 424 Mass. 242, 246, cert. denied, 521 U.S. 1123 (1997); (vi) repeatedly stressed that the jury must decide the case based only on the evidence that had been put before them (thus negating the possibility that they might understand moral certainty to permit a conviction based on subjective feelings, rather than on hard evidence, one of the principal vices of moral certainty language), see *Victor* v. *Nebraska, supra* at 15-16.

waiver. See *Mains* v. *Commonwealth, ante* 30, 32-34 & nn.3, 5 (2000) (stating standards for waiver and pointing out that claim of structural error [even of constitutionally deficient reasonable doubt instruction] may be waived). It does not matter that the defendant did not have counsel in connection with the motion. See *id.* at 35-36 ("pro se litigant [even in a case of constitutional magnitude] is bound by the same rules of procedure as litigants with counsel").

For the reasons stated, the order denying the defendant's third postdirect appeal motion for a new trial is affirmed.

*So ordered.*